UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 07-20605

               Plaintiff,                    Mark A. Goldsmith
vs.                                          United States District Judge

DELANO DEJUAN MARTIN,                        Michael Hluchaniuk
                                             United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION TO SUPPRESS (Dkt. 54)**

## I.   PROCEDURAL HISTORY

An indictment was returned on December 5, 2007, charging defendant

Delano Dejuan Martin, William Anthony Hall, and Lamar Thomas Edwards, with

conspiracy to distribute 100 grams or more of heroin.  (Dkt. 1).  An arrest warrant

was issued at that time but defendant was not arrested on that warrant until April

23, 2012.  Defendant filed the instant motion to suppress on June 21, 2012.  (Dkt.

54).  The government filed a response to the motion on July 12, 2012.  (Dkt. 56).

An evidentiary hearing was held on September 19, 2012.  At the conclusion of the

hearing, defense counsel indicated a desire to order a transcript of the hearing and

file supplemental briefs.  A briefing schedule was established at the time.

Following the hearing, counsel indicated they wished to have the matter decided

without a transcript of the evidentiary hearing and without supplemental briefing.
A stipulation and order was entered on October 23, 2012, reflecting the agreement
of the parties to allow the matter to be decided without a transcript or
supplemental briefing.  (Dkt. 63).

This matter is now ready for report and recommendation.  For the reasons
set forth below, the undersigned **RECOMMENDS** that defendant's motion to
suppress be **DENIED**.

## II.    RELEVANT FACTS

During the evidentiary hearing in this matter on September 19, 2012, the
only two witnesses to testify were Flint police officers John Joseph and Rogelio
Villarreal who were called on behalf of the government.  The government also
offered Exhibits A-F which were Flint Police Department (FPD) investigative
reports and other materials maintained by the FPD relating to the investigations in
question.

Sgt. Joseph testified about an incident in October of 2002 where FPD
officers were investigating reports of drug trafficking from a specific residence in
Flint.  The reports of that investigation indicate that a confidential informant made
a controlled purchase of cocaine from someone in the residence and thereafter the
officers obtained a search warrant for the residence.  As officers approached the
residence, a person, later identified as the defendant, was seen at an open door to

the residence.  After apparently seeing the officers, defendant "slammed" the door and retreated into the residence.  Later defendant allowed the officers into the residence where quantities of drugs and drug paraphernalia were found.  Defendant was arrested and at first gave the name of Dejuan Smith to the officers.  He was later identified, through fingerprints, as Delano DeJuan Martin and booking photographs were taken of him.  (Ex. A).

Sgt. Joseph testified that at some point after that the FPD Special Operations Bureau began to investigate three individuals, known only at that time as "Will, Carl and Juan," based on information obtained by Off. Villarreal from drug users that those three individuals were selling heroin in the Flint area.

In January of 2006, FPD officers, including Off. Villarreal, went to a residence on Tremont Avenue in Flint.  The officers ended up searching the residence and arresting William Anthony Hall, a co-defendant in the present case, for heroin related offenses.  (Ex. B).

Four months later, in May of 2006, FPD officers, including Sgt. Joseph and Off. Villarreal, conducted a drug trafficking investigation which involved the arrest of Dominique Hartley and Gary Hull as the apparent suppliers of heroin to several individuals.  An address book was seized for Hull that contained the name "Juan" and the phone number "618-2017."  The address book also contained a phone number for "Will" as well as someone identified as "Black."  (Ex. C).

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

Off. Villarreal and other FPD officers used a confidential informant in July of 2006 to make a controlled purchase of heroin from a person in a residence on Nebraska Street in Flint. A search warrant for the residence followed the controlled purchase and Karen Finch was arrested. Ms. Finch informed the officers that her son and she had been heroin users for some time and that she started using heroin and buying it from the same source as her son had been using for several years, a man she knew as Juan. Finch stated that when her son ran up a debt for heroin with Juan he threatened to harm or kill her son if the debt was not paid. In order to work of the debt to Juan, Finch allowed someone she believed to be Juan's uncle sell heroin from her house for a period of time. This person, she referred to as "Unc or Unk," came to the house and sold heroin for Juan at that location. She stated "Unc or Unk" carried a gun while he was selling heroin at the house. Finch stated she became a heroin user in August of 2005 and has been selling heroin 5-10 times a day, 6 days a week, in order to support her drug habit. Juan brings the heroin to the house or has someone bring it on his behalf. The person she knew as "Unc or Unk" and someone who "supposedly" was Juan's brother brought heroin to the house on behalf of Juan. (Ex. D).

On August 11, 2006, Ronald Major was in a vehicle that was stopped by officers in Flint after what appeared to be attempts to purchase drugs. Mr. Major was found to be in possession of drug paraphernalia and was arrested for such an

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

offense.  Sgt. Joseph subsequently interviewed Mr. Major.  Major told Sgt. Joseph that he had been a heroin user for approximately five years and his source for heroin was a person named "Juan."  The heroin was purchased initially direct from Juan but later from others who worked for Juan, specifically "Will" and "Black," which Sgt. Joseph later learned was another name for Carl.  Major contacted Juan by calling him at phone number 618-2017.  Major stated he was using as much as a half gram per day of heroin at the height of his addiction and that he had overdosed on the heroin more than once that resulted in him going to a hospital. (Ex. E).

Off. Villarreal began his investigation of Juan sometime before 2006 based on information from informants and people arrested for possession of heroin.  He was able to locate the person these individuals referred to as Juan during the course of the investigation.  Off. Villarreal saw Juan numerous times prior to September of 2006 driving a black vehicle.  Villarreal did not know Juan's true name until Sgt. Joseph showed him a booking photograph of defendant from defendant's arrest in 2002.  Sgt. Joseph had identified defendant by using the name Juan to search a police database and showing defendant's photograph to Off. Villarreal to confirm the identification sometime before September of 2006.

On September 7, 2006, Off. Villarreal was advised by confidential informants that "Will and Carl" were selling heroin from a motel room in Flint.

Officers went to that motel and were further informed that Will and Carl had moved to a second motel. Officers went to that second motel and placed it under surveillance. While watching a specific room at the second motel the officers observed a male suspect leave the motel and travel to a near-by gas station where it appeared that a drug transaction took place between the man from the motel and two individuals in a pick-up truck. Officers approached the pick-up truck and stopped the three individuals. A quantity of heroin was seized from one of the individuals in the truck. The man who had left the motel room was identified as Lamar Thomas Edwards, aka Carl. Off. Villarreal went back to the motel room that was under surveillance and observed William Anthony Hall, aka Will coming out of the room the officers had under surveillance. The officers entered the motel room and seized quantities of heroin. Hall's cell phone rang while the officers were in the room and they answered the phone. A female indicated that she wanted to purchase a controlled substance and she was invited to come to the motel. When some of the officers left the motel room to find the female who was expected to come to the motel Off. Villarreal observed defendant arrive at the motel room, look in a window and then attempt to enter the room through the door, which was locked. Off. Villarreal left the motel room and arrested defendant. The cell phone in defendant's possession was seized and it began to ring shortly after Off. Villarreal took possession of it. The first call was answered

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

and the caller asked about obtaining what was believed to be a quantity of heroin.

The caller was invited to the motel and shortly thereafter a person was arrested

after coming to the motel room.  A second caller was invited to the motel room but

said he did not have transportation to the motel at that time and would call back.

Another 27 calls were placed to defendant's phone but were not answered by the

officers.  (Ex. F).   Off. Villarreal stated he went through the contact list in

defendant's cell phone and recognized some of the names in that list.

## III.    ARGUMENTS OF THE PARTIES

Defendant argues there was no probable cause for his arrest and therefore

any evidence obtained as a result of the illegal arrest, including his cell phone and

subsequent confession, should be suppressed.  (Dkt. 54, Pg ID 123).  Specifically,

defendant contends that on September 7, 2006, he went to a motel room, looked in

a window and attempted to open the door, which is insufficient evidence to

establish probable cause for his arrest.  Defendant's argument regarding his cell

phone is that even if there was probable cause for his arrest, the officers did not

have a search warrant and he had an expectation of privacy in calls that were made

to the phone and in information stored in the phone.  (Dkt. 54, Pg ID, 129-31).

The government contends that when all the information available to the

arresting officer is considered, as opposed to just the information on the day of

defendant's arrest, there is ample information to establish probable cause for

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

defendant's arrest.  Further, the government argues that defendant had no reasonable expectation of privacy in the content of calls made to his cell phone and therefore there was no constitutional violation associated with the officers answering calls made to defendant's cell phone after it was seized.  (Dkt. 56, Pg ID 141-42).

## IV.   ANALYSIS AND CONCLUSIONS

### A.   Probable Cause For Arrest

The first issue before the Court is the question of whether probable cause supported defendant's arrest on September 7, 2006.  "[A] warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*.  Probable cause exists where the "facts and circumstances within the [arresting] officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  In determining if probable cause exists courts must look to the "totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983), and view the facts

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

"as a whole and in a practical manner." *United States v. Pepple*, 707 F.2d 261, 263 (6th Cir. 1983).

Defendant appears to argue that the probable cause determination should be made based on the limited circumstances involving defendant's appearance at the motel on September 7, 2006. This snapshot of defendant's activities shows no more than his presence outside a motel room and his attempt to open the door to the room, according to defendant. (Dkt. 54, Pg ID 129). The government's responsive argument is that the arresting officer knew, personally or based on information communicated by other officers: (1) that two individuals, Edwards and Hall, were selling heroin from a motel room, (2) that heroin was seized from a customer of theirs, (3) that heroin was seized inside the motel room, (4) that Off. Villarreal and other law enforcement officers had received information from informants and drug users that defendant was supplying Edwards and Hall with heroin for distribution over a long period of time, and (5) that defendant had been identified by Off. Villarreal and that he recognized defendant as the person that was allegedly supplying heroin to the two suspects over an extended period of time when defendant showed up at the motel, and tried to enter the room, on September 7, 2006. (Dkt. 56, Pg ID 141).

If all the officers knew about defendant were their observations of defendant's activities on September 7, 2006, defendant would have a persuasive

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

argument.  However, probable cause is based on the totality of the circumstances

and the totality of these circumstances shows much more than the defendant

coming to a motel room on September 7, 2006.  What the officers, including Off.

Villarreal, knew about defendant dates back to at least the January of 2006 when

officers arrested William Hall on a heroin related offense.  While the incident

reflected in Ex. A did not directly involve defendant, Hall's involvement in heroin

trafficking was consistent with information Off. Villarreal had received from

informants and drug users, from "before 2006," that "Juan," later identified as

defendant, was associated with William Hall and others in drug trafficking.  The

names "Juan," "Will" and "Black" (another name for Lamar Thomas Edwards, aka

Carlieve Horton, aka Carl) showed up in an address book seized from two heroin

traffickers in May of 2006 and the phone number associated with "Juan" was a

phone number that drug users told Off. Villarreal they called to purchase heroin.

(Ex. C).[1]

Defendant was directly implicated by Karen Finch in July of 2006 when she

was arrested for trafficking in heroin and identified "Juan" as the source for heroin

---

[1]  The government's brief indicates that "Will" and "Black" were both
names used by co-defendant William Anthony Hall.  (Dkt. 56, Pg ID 141).
However, during the evidentiary hearing in this matter Sgt. Joseph testified that
"Black" was another name used by "Carl" who the government contends is Lamar
Thomas Edwards, aka Carlieve Horton.

for her and her son for several years.  Finch stated that "Juan" sold heroin directly

to her and her son some of the time but had others deliver it on occasion and even

had someone named "Unk" (the government contends this was Lamar Thomas

Edwards, aka Carl) sell heroin from Finch's house prior to August of 2005.  (Ex.

D).

In August of 2006, Flint police officers arrested Ronald Lee Major relating

to an attempt to purchase heroin.  Major informed Sgt. Joseph following his arrest

that he had been a heroin user for several years and had been obtaining the heroin

he used from "Juan."  Major stated he purchased direct from "Juan" at first, but

later the heroin was delivered by people who worked for "Juan" including a

person he knew as "Carl."  Major stated he overdosed on heroin that he had

obtained from "Juan" and "Carl."  (Ex. E).[2]

On September 7, 2006, the officers went to a motel in Flint based on

information received from informants that "Will" and "Carl," two people who the

officers believed were directly associated with "Juan," who was known to be

defendant at that time.  The officers identified a particular room that was being

---

[2]  The report relating to Ronald Major, Ex. E, includes notes of an interview
with Major conducted by Sgt. Joseph dated May 17, 2007.  Sgt. Joseph testified
during the hearing that Major was interviewed shortly after his arrest in August of
2006 and a second time in May of 2007 and gave the same information on both
occasions.  Sgt. Joseph testified that he only made notes at the May, 2007
interview.

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

occupied by "Will" and "Carl" and subsequently observed someone leave that room and conduct a drug transaction at a nearby gas station. The person conducting the drug transaction who had come from the room in the motel was Lamar Edwards, aka Carl. He was arrested. Officers returned to the motel room and found William Hall, aka Will, outside the room and arrested him. The officers then entered the motel room and found heroin and related drug paraphernalia in the room. Some of the officers left the room to look for someone who had called Hall's phone and arranged to come to the motel to purchase heroin. Off. Villarreal remained in the motel room and saw defendant, the person he knew as "Juan" from the earlier investigation, look in the window of the room and attempt to enter the room. At that point Off. Villarreal arrested defendant and seized his cell phone.

The probable cause calculation is made based on the totality of the circumstances, rather than just a limited set of facts as argued by defendant. When all the facts associated with this investigation are considered they "...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed...an offense." *Michigan v. DeFillippo*, 443 U.S. at 37. As of the moment, defendant attempted to enter the motel room "Will" and "Carl" had occupied when they were selling heroin on September 7, 2006, it was reasonable for Off. Villarreal, the arresting officer, to conclude that probable cause existed for defendant's arrest for conspiracy to

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

distribute heroin.  The sum of the parts of this investigation clearly equates to

probable cause for defendant's arrest under a prudent person standard.  It may well

have been that the probable cause threshold was crossed sometime before

September 7, 2006, as established by defendant during the cross-examination of

Off. Villarreal, but Off. Villarreal, an experienced police officer, was "building"

his case and was under no obligation to arrest when probable cause was first

established.

###### B.      Search of Cell Phone

Defendant claims that when his cell phone was "seized, answered and

searched" his Fourth Amendment rights were violated.  (Dkt. 54, Pg ID 129).  The

government contends that defendant has no legitimate expectation of privacy in

telephone conversations between other people, here Off. Villarreal and someone

calling defendant's phone to order drugs, and therefore his Fourth Amendment

rights were not violated.

Defendant asserts that his cell phone was seized "before [the officers]

arrested him."  (Dkt. 54, Pg ID 130).  However, there is no evidentiary support for

that assertion of fact.  The evidence at the hearing indicated that the cell phone

was seized contemporaneously with his arrest and therefore the seizure would be

incident to the arrest.

In *United States v. Passarella*, 788 F.2d 377 (6th Cir. 1986) officers entered

a residence based on an arrest warrant for a resident of the home.  While inside the

residence the telephone in the residence rang and one of the officers present in the

residence answered the phone and spoke with the officer apparently believing the

officer was the defendant.  While noting the Fourth Amendment protected right to

privacy in one's own telephone conversations, the Court determined that the

defendant had no reasonable expectation of conversational privacy in a

conversation between two other individuals - the officer and a third person.  Two

years later in *United States v. Sangineto-Miranda*, 859 F.2d 1501 (6th Cir. 1988),

the Court again addressed a situation where police officers had entered an

apartment to "secure" it while a search warrant was obtained.  While in the

apartment the phone rang and it was answered by one of the officers who

pretended to be one of the individuals in the apartment.  Citing *Passarella*, the

Sixth Circuit again concluded the defendant had no reasonable expectation of

privacy in the "conversations in which he did not participate." *Id*. at 1514.

Following the principles expressed in *Passarella*, the Sixth Circuit

determined that someone sending a telephone number to a digital pager had no

reasonable expectation of privacy in information provided to a third party.  "[T]he

Fourth Amendment does not protect a wrongdoer's misplaced trust that the one

intended to receive a communication will actually receive it." *United States v.*

*Meriwether*, 917 F.2d 955, 959-60 (6th Cir. 1990).  A court in this circuit has also

determined that there was no Fourth Amendment violation when an officer entered

an apartment seeking to arrest someone who had been involved in a felonious

assault offense and answered the phone inside the apartment when it rang. The

officer spoke with the person he was seeking to arrest and noted the number on the

caller ID display of the telephone. Quoting from *Passarella,* and noting cases

from two other circuits coming to the same conclusion, the district court

concluded that where an officer is lawfully on the premises he or she may answer

a phone without violating the Fourth Amendment. *Carr-Poindexter v. Warden,*

*Lebanon Correctional Inst.*, 2009 WL 3276094 (S.D. Ohio 2009).

None of these cases involve a cell phone, but the principles expressed in

them seem to apply equally to a cell phone and defendant does not cite any

authority to conclude otherwise. Other than challenging the lack of probable

cause for the arrest, defendant makes no other challenge to the seizure of

defendant's cell phone. Therefore, Off. Villarreal's possession of the cell phone at

the time the phone rang was lawful.

A second contention made by defendant regarding his cell phone was that it

was unlawfully "searched" after it was seized. The evidence at the hearing was

that Off. Villarreal reviewed the contact list in the phone and identified other

individuals he recognized, apparently from his experience investigating drug

cases. The government has not indicated what information, if any, contained in

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

the cell phone the government would offer during the trial in this matter and

defendant has not suggested what information he is concerned about.  Defendant

does not cite any specific authority for this contention other than general authority

for the proposition that the Fourth Amendment protects areas from unreasonable

searches and seizures where a person has a reasonable expectation of privacy.  The

government's brief does not directly address this argument.

While the Sixth Circuit does not appear to have specifically addressed this

issue, at least four Circuits have concluded that it is reasonable, in a constitutional

sense, for a police officer to search a cell phone, without a warrant, that was seized

incident to the arrest of the defendant.  *United States v. Curtis*, 635 F.3d 704, 712-

13 (5th Cir. 2011) (noting courts in the 4th, 7th and 10th Circuits have reached

same conclusion).  The undersigned finds this authority persuasive as to the

propriety of Off. Villarreal examining the contents of defendant's cell phone

following defendant's arrest on September 7, 2006.

## V.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendant's motion to suppress be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

     Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  November 9, 2012

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605

## CERTIFICATE OF SERVICE

I certify that on November 9, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Robert Haviland and Mark Magidson</u>, and that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Pretrial Services Agency and United States Marshal Service</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motion to Suppress
*U.S. v. Martin*; Case No. 07-20605
